**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**THOMAS LAMONT DYNO,**

                                        **Plaintiff,**

**-against-**                                        **3:09-CV-313**
                                                     **(TJM-DEP)**

**SUNY BINGHAMTON,**
**WHRW FM RADIO,**

                                        **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


                            **DECISION & ORDER**

**I.  INTRODUCTION**

        Plaintiff commenced this action *pro se* pursuant to 42 U.S.C. § 1983 alleging that

the suspension and subsequent revocation of his disc jockey privileges at radio station

WHRW FM (the "Station"), located on the campus of Binghamton University of the State

University of New York ("BU"), violated his First and Fourteenth Amendment rights. See

Compl., dkt. # 1.  Plaintiff sues the Station and BU seeking injunctive and declaratory relief

as well as monetary damages. See id.

        BU moves pursuant to Fed. R. Civ. P. 12(b)(1) & (6) to dismiss the Complaint on

the grounds that: 1) the claims against BU are barred by the Eleventh Amendment; and 2)

the allegations against BU fail to state a claim upon which relief can be granted. See BU's

1

Mot. to Dismiss, dkt. # 7.  Plaintiff opposes the motion.  See Plf. Opp., dkt. # 8.

Plaintiff also moves for a preliminary injunction requiring that his disc jockey privileges be reinstated and enjoining Defendants from enforcing the Station's policy that prohibits the use of on-air language considered obscene or profane by the Station. Pl. Emergency Motion, dkt. # 18.  BU opposes the preliminary injunction, see BU's Resp. in Opp. [dkt. # 20], and Plaintiff has replied to BU's opposition. See Pl.'s Reply [dkt. # 23]. The Station has not appeared in this action and the Clerk of the Court entered default against this Defendant on May 7, 2009. See Clerk's Entry of Default, dkt. # 13.

## II.    STANDARDS OF REVIEW

### a.    FED. R. CIV. P. 12(b)(1)

A case is to be dismissed for lack of subject matter jurisdiction pursuant to FED. R. CIV. P. 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  Makarova v. United States, 201 F. 3d 110, 113 (2d Cir. 2000).  A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.  See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996).  When a defendant moves to dismiss claims pursuant to Fed. R. Civ. P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993).  For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." Id.  Both the movant and the pleader are permitted to use affidavits and other pleading materials to support and oppose the motion to dismiss

2

for lack of subject matter jurisdiction. See Makarova, 201 F.3d at 113; Filetech S.A. v. France Telecom, S.A., 157 F.3d 922, 932 (2d Cir. 1998); John Street Leasehold, LLC v. Capital Mgt. Res., L.P., 2001 WL 310629, at *2 (S.D.N.Y. March 29, 2001). "Thus, the standard used to evaluate a Rule 12(b)(1) motion is similar to that used for summary judgment under Fed. R. Civ. P. 56." Lopresti v. Merson, 2001 WL 1132051, at *5 (S.D.N.Y. Sept. 21, 2001).

> **b.** **FED. R. CIV. P. 12(b)(6)**

A motion under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims pleaded in the case.  The Supreme Court recently elaborated on the standard to be used in addressing a Rule 12(b)(6) motion and again explained Rule 12(b)(6)'s interrelationship with the federal pleading standard under FED. R. CIV. P. 8. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In this regard, the Court explained:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed.2d 929 (2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555, 127 S. Ct. 1955 (citing Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S .Ct. 1955.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557, 127 S. Ct. 1955.

Ashcroft, 129 S. Ct. at 1949.

To withstand a Rule 12(b)(6) motion the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 557). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts "that are 'merely consistent with' a defendant's liability [] 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id. (quoting Twombly, 550 U.S. at 557).

While the Rule 12(b)(6) standard has long required that a court accept as true the allegations contained in a complaint, this rule does not apply to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. (citing Twombly, 550 U.S. at 555). The liberality accorded pleadings under Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id., at 1950 (citing Twombly, 550 U.S. at 556).

In deciding a Rule 12(b)(6) motion, review "is generally limited to the facts and allegations that are contained in the [challenged pleading] and in any documents that are either incorporated into the [pleading] by reference or attached to the [pleading] as exhibits." Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004) (citations omitted). Dismissal is appropriate where the pleading fails as a matter of law to state a claim upon which relief can be granted. Phelps v. Kapnolas, 308 F.3d 180, 187 (2d Cir. 2002).

### c.    Preliminary Injunction

A preliminary injunction is an extraordinary measure that should not be routinely

4

granted.  Twentieth Century Fox Film Corp. v. Marvel Enterp., Inc., 277 F.3d 253, 258 (2d

Cir. 2002).  It has been said that it is "one of the most drastic tools in the arsenal of judicial

remedies."  Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985).

The standard a court must utilize in considering whether to grant a request for injunctive

relief is well-settled in this Circuit.  As the Second Circuit noted in Covino v. Patrissi, 967

F.2d 73 (2d Cir. 1992), the movant must show: (a) irreparable harm and (b) either (1) a

likelihood of success on the merits of the claim or (2) sufficiently serious questions going

to the merits and a balance of hardships tipping decidedly toward the party seeking

injunctive relief.  Id., at 77.  Where, however, a movant seeks relief which will alter, rather

than maintain, the status quo, or which will provide him with substantially all the relief

sought, the injunction sought is properly characterized as mandatory rather than

prohibitory.  A party seeking a mandatory injunction must make a "clear" or "substantial"

showing of the likelihood of success, as well as irreparable harm should the injunction not

be granted. Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996), cert. denied, 525 U.S. 824

(1998); Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d

Cir.1995)("[A] mandatory injunction should issue only upon a clear showing that the

moving party is entitled to the relief requested, or where extreme or very serious damage

will result from a denial of preliminary relief.")(internal quotation omitted).  While a factual

hearing is generally required on an application for a preliminary injunction, no hearing is

required where material issues are not in dispute. Maryland Casualty Co. v. Realty

Advisory Board on Labor Relations, 107 F.3d 979, 984 (2d Cir. 1997).

III.    BACKGROUND

The following facts are taken from the Complaint and the exhibits attached thereto, or from uncontradicted facts presented in the affidavits submitted in this matter.

WHRW FM (the "Station") is an educational and community radio station located on the campus of Binghamton University of the State University of New York ("BU"). Hagerbaumer Aff., ¶ 3.  It operates under a Federal Communications Commission ("FCC") license as a non-commercial, educational FM radio station. Id.  The Station is a student-run organization that is chartered and funded by the Student Association at BU. Id.  BU's "involvement with WHRW is limited to issues of the license and Federal Communication ("FCC") controls and guidelines."  Compl. Ex. 1 (10/27/05 Ltr. from BU President Lois B. DeFleur).  The BU administration has no role in determining content or structure of the Station's programming or enforcement of Station policy. Compl. Ex. 1; Hagerbaumer Aff., at ¶ 4.  All Station programming, including creation of the broadcast schedule, is decided by the Station's Board of Directors and Program Director. Hagerbaumer Aff. ¶ 5; Compl. Ex. 1. The Station Manager is responsible for the oversight and implementation of all Station policies and procedures, including those relating to staffing and broadcasting privileges. Hagerbaumer Aff., at ¶ 5.

The Station allows students and non-student community members and groups to have on-air shows. Compl. Ex. 1.  Plaintiff was a volunteer disc jockey at the Station and had his own on-air show.  Compl. Ex. 2.

The Station has a policy that prohibits its disc jockeys from, at all times, using words, phrases, or materials that the Station's managers consider obscene or profane. Compl, Ex. 8.  In this regard, the Station's policy provides:

> The FCC's definition of obscenity is material which is in the prurient interest, sexual in nature and lacking scientific, literary, artistic or political value. WHRW follows the FCC definition.
>
> The WHRW definition of profanity is words or material that can be interpreted [as][1] profane or vulgar.  Examples of profane language include: swearing, expletives and obscene language.
>
> A 24 hour ban on obscenities and profanity is in effect at WHRW. The following are examples of obscene and profane material: "Fuck", "Motherfucker", "Shit", and other words, phrases or material that fit the two definitions as defined by the FCC, the WHRW Program Director or the WHRW General Manager.

Id.

At about 4 a.m. on March 5, 2006, while Plaintiff was on the air, he allegedly played the phrase: "you're not worth shitting on."  Compl. ¶¶ 6,18 &  Ex. 2.[2]   On March 9, 2006, the Station's Program Director wrote to Plaintiff indicating that it had been brought to her attention that Plaintiff played this phrase and advised him that "[t]his is against WHRW policy and therefore, absolutely cannot be played EVER."  Compl. Ex. 2 (emphasis in original).  She further advised: "I consider this a warning.  However, if this happens again, I will be forced to cancel your show."  Id.

On March 18, 2006, the Station's General Manager sent Plaintiff a letter indicating:

> During your show from 10pm [sic] March 11th to 2 AM [sic] March 12th, you deliberately played material containing words you knew to be contrary to WHRW's rules and regulations.  You also failed to log a station ID from the hours of 2200 and 0100 as well as failed to log a sign-off cart.  As a cleared DJ who has taken and passed the WHRW clearance exam, you know that

---

[1] The text uses the word "or" instead of "as" which, for obvious reasons, appears to be a typographical error.

[2] Plaintiff does not deny that he played this phrase while on the air and has contended throughout this matter that his speech on this, and another date, was protected under the First Amendment. See e.g. Compl. Ex. 7 (March 27, 2006 letter from Plaintiff to Lois B. DeFluer, President of SUNY Binghamton, complaining that his "broadcasting privileges" were "arbitrarily revoked" for "airing protected speech.").

7

the FCC requires WHRW to air station ID within 5 minutes of each hour and also requires that the information in the sign-off cart be played before broadcast ends.

As of this moment, your clearance has been suspended pending a board meeting at 7pm on Thursday[,] March 23rd 2006 in room WB08 (next door to the station). At this meeting you be able to speak on your behalf and the future of your clearance at WHRW will be discussed.

Compl. Ex. 3; see also Compl. ¶¶ 6, 18.[3]

On March 24, 2006, the Program Director wrote in a letter to Plaintiff:

After two separate incidents involving WHRW rules violations and a board meeting to hear your defense, it has been the decision of the WHRW board to suspend your clearance, starting immediately, and lasting until Summer 2007. At this point, you will have to re[-]apprentice and take the clearance exam in order to regain your status as a WHRW member and engineer.

Compl. Ex. 4.

Plaintiff returned to the Station on June 23, 2007 and served as an apprentice for one broadcast show.  Thereafter, however, Plaintiff refused to sign an agreement to abide by the Station's policy and he was banned "indefinitely" from broadcasting as a disc jockey at the Station. Compl. ¶ 7 & Ex. 9.

Plaintiff commenced this action on March 18, 2008.  He sues both the Station and BU pursuant to 42 U.S.C. § 1983.  Plaintiff's primary contention is that the Station's policy imposing a 24-hour ban on material the Station's managers consider to be profane or obscene, which Plaintiff contends is more restrictive than, and at odds with, FCC regulations banning such material only at certain hours, infringes his First Amendment right to free speech. See e.g. Compl. ¶ 9 ("the suspension of [Plaintiff's broadcasting]

---

[3]Again, Plaintiff does not deny that he played material that was in violation of the Station's policy. He also does not deny that he failed to log a station ID at the times asserted.

privilege was an infringement [of his First Amendment rights] and on a ground contrary to express FCC policy."); ¶ 10 (the Station's policy placing a 24-hour ban on obscenity and profanity is contrary to FCC regulations that allow such speech "within the safe harbor zone"); ¶¶ 20- 23 (asserting that the Station's policy was more restrictive than the FCC regulations).  Plaintiff seeks monetary damages, a declaration that the Station's policy is unconstitutional, and an injunction restoring his broadcast privileges and preventing the Station from enforcing its policy in the future.

IV.     DISCUSSION

        a.      Eleventh Amendment Immunity

        BU argues that the action against it, a state agency, is barred by the Eleventh Amendment.  Plaintiff argues that the exception to Eleventh Amendment immunity enunciated in Ex parte Young, 209 U.S. 123 (1908), applies to that portion of the action seeking prospective equitable relief.

        The Eleventh Amendment serves as a jurisdictional bar to suits against a state agency regardless of the nature of the relief sought, including suits in equity. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); Green v. Mansour, 474 U.S. 64, 72-73 (1985); see also Dube v. State University of New York, 900 F.2d 587, 594 (2d Cir. 1990) ("For Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party.") (internal quotation marks omitted) (alterations in original).  However, a narrow exception to this principle allows a federal court to issue an injunction against a state official in his or her official capacity who is acting contrary to federal law.  Ex parte Young, 209 U.S. 123

9

(1908); see Pennhurst, 465 U.S. at 102; New York Health and Hospitals Corporation et al. v. Perales, 50 F.3d 129 (2d Cir. 1995). This exception is a limited one, and is authorized to "vindicate the supremacy of [federal] law."  Ward v. Thomas, 207 F.3d 114, 119 (2d Cir. 2000).  Under Ex parte Young, "a plaintiff may sue a state official acting in his official capacity - notwithstanding the Eleventh Amendment - for prospective, injunctive relief from violations of federal law." In re Deposit Ins. Agency, 482 F.3d 612, 617(2d Cir. 2007)(internal quotation marks omitted).   "Such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities."  Ghent v. Moore, 519 F. Supp.2d 328, 334 (W.D.N.Y. 2007)(citing Santiago v. New York State Dep't of Correctional Services, 945 F.2d 25, 32 (2d Cir.1991) ("a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state"); Banks v. SUNY, 2007 WL 895505, at *7 (W.D.N.Y. Mar. 22, 2007)("A state *official* . . . may be sued in his official capacity in a federal forum to enjoin conduct that violates the federal Constitution"); Dicks v. Binding Together, Inc., 2007 WL 1462217, at *5 (S.D.N.Y. May 18, 2007)("Plaintiff's claims for prospective injunctive relief are not barred by the Eleventh Amendment - provided, however, that Plaintiff brings those claims against a state official, rather than the state itself.").

Plaintiff has not sued a state official acting in his or her individual or official capacity.  Accordingly, the exception to Eleventh Amendment immunity enunciated in Ex parte Young is inapplicable.  The claims against BU must be dismissed.

**b.**     **Rule 12(b)(6)**

Assuming *arguendo* that Plaintiff intended to bring an official capacity suit against a

BU official, such as President DeFleur, he fails to assert a plausible claim of either a First

or Fourteenth Amendment violation against such a defendant.

**1.     First Amendment**

The First Amendment provides that "Congress shall make no law . . . abridging the

freedom of speech. . . ."  U.S. Const. amend. I.  It has "long been established that 'the

conception of liberty under the due process clause of the Fourteenth Amendment

embraces the right of free speech,' and that [the First Amendment's] provisions therefore

apply to state governments."  Lusk v.  Village of Cold Spring, 475 F.3d 480, 485 (2d Cir.

2007)(quoting Stromberg v. California, 283 U.S. 359, 368 (1931)).  "The First Amendment

'was fashioned to assure unfettered interchange of ideas for the bringing about of political

and social changes desired by the people.'" Meyer v. Grant, 486 U.S. 414, 421, 108 S. Ct.

1886, 100 L. Ed.2d 425 (1988) (quoting Roth v. United States, 354 U.S. 476, 484, 77 S.

Ct. 1304, 1 L. Ed.2d 1498 (1957)).

Assuming without deciding that the Station operated as a limited public forum in

which the government may make only reasonable, viewpoint-neutral rules governing the

content of speech allowed therein, see Husain v.  Springer, 494 F. 3d 108,121-22 (2d Cir.

2007),[4] Plaintiff has failed to allege that there existed any BU policy concerning the

---

[4]In Husain, the Second Circuit wrote:

Courts have long recognized that student media outlets at public universities, and the student
journalists who produce those outlets, are entitled to strong First Amendment protection.
These rights stem from courts' recognition that such student media outlets generally operate
as "limited public fora," within which schools may not disfavor speech on the basis of

(continued...)

operation of the Station, or that any BU official took any affirmative action to curtail the

content of Plaintiff's speech.[5]  Rather, the allegations in the Complaint and the exhibits

attached thereto indicate that BU administrators had no role in operating the Station, in

determining the content or structure of the Station's programing, or in enforcing the

Station's policies.  See Compl. and Exs. 1-4, 6, 8-9.  Although BU is involved with the

Station on "issues of the license and [FCC] controls and guidelines," Compl. Ex. 1,

Plaintiff's grievance is with the Station's policy which, he contends, is more restrictive than,

and at odds with, the FCC's regulations on the use of obscenities and profanity.  See e.g.

Compl. ¶¶ 9, 10, 20- 23.  Thus, even construing the allegations in the *pro se* Complaint to

raise the strongest argument they suggest, see Hughes v. Rowe, 449 U.S. 5, 9, 101 S. Ct.

173, 66 L.Ed.2d 163 (1980), Plaintiff fails to allege a plausible claim against a state official

because he fails to allege facts supporting the causation element of his First Amendment

---

[4](...continued)
viewpoint.

A limited public forum is "is created when the State 'opens a non-public forum but limits the
expressive activity to certain kinds of speakers or to the discussion of certain subjects.' . . . In
limited public fora, the government may make reasonable, viewpoint-neutral rules governing
the content of speech allowed." Peck v. Baldwinsville Cent. Sch. Dist., 426 F.3d 617, 626 (2d
Cir. 2005) (emphasis and internal citations omitted). Once the state has created a limited
public forum, however, it must respect the boundaries that it has set. It may not "exclude
speech where its distinction is not reasonable in light of the purpose served by the forum, nor
may it discriminate against speech on the basis of its viewpoint." Rosenberger v. Rector &
Visitors of the Univ. of Va., 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed.2d 700
(1995)(internal citations and quotation marks omitted). The forum itself can take many forms,
yet the analysis of the constitutionality of restrictions imposed on speech made in the forum
remains the same. See id. at 830, 115 S. Ct. 2510 ("The [student activity fund] is a forum
more in a metaphysical than in a spatial or geographic sense, but the same principles are
applicable.")

494 F.3d at 121-22.

[5]Plaintiff has not alleged that he expressed any viewpoint that BU administrators or the Station's
managers sought to curtail.

12

claim.  See Brown v. Sheridan, 894 F. Supp. 66, 71 (N.D.N.Y. 1995)("To prevail on his

claim under Title 42, section 1983, plaintiff must show that officials were 1) acting under

color of state law, 2) that their actions deprived plaintiff of a right guaranteed by the

constitution or the laws of the United States, and 3) that the defendants' acts were the

proximate cause of the injuries and consequent damages sustained by the

plaintiff.")(internal citations omitted).  Simply stated, he fails to allege facts supporting the

contention that a State official caused his asserted-First Amendment injury. Blyden v.

Mancusi, 186 F.3d 252, 267 (2d Cir. 1999)("Liability under Section 1983 is only for those

deprivations of rights caused by the defendant's behavior.").[6]  Thus, even if not barred by

the Eleventh Amendment, Plaintiff fails to plead a plausible First Amendment claim

against a BU official.

### 2.    Fourteenth Amendment

Again construing Plaintiff's *pro se* Complaint to raise the strongest argument it

suggests, he may also be contending that (1) he had a protected property right in his

broadcast privileges, and/or, (2) he had a protected liberty interest in his good reputation,

both of which were deprived in violation of his Fourteenth Amendment right to due

process. See Compl. ¶ 17 ("My privilege to broadcast under the FCC license is a privilege

and property right conferred by the State and protected under the U.S. Constitution, which

---

[6]Plaintiff argues in his Memorandum of Law that President DeFleur was aware of the unconstitutional
practice at the Station yet failed to intervene to stop it.  In support of this proposition, he cites to DeFleur's
October 27, 2005 letter which is attached to the Complaint as Exhibit A.  However, Plaintiff has not sued
President DeFleur in either her official or individual capacity, and he has not provided any factual allegations
explaining what prompted DeFleur's October 27, 2005 letter.  It would be sheer speculation to conclude that
the letter was in response to a complaint about the Station's obscenity and profanity policy.  While Plaintiff
does allege in the Complaint that he complained to DeFleur of the Station's allegedly unconstitutional policy,
the complaint was made after he was suspended and, therefore, could not have been the basis of DeFleur's
October 27, 2005 letter. See Compl. ¶ 24 & Ex.  7 (Pl.'s 03/27/06 letter to DeFleur).

*inter alia* cannot be revoked or suspended in terms of 1ˢᵗ Amendment rights under the U.S. Const. without compelling interest."); id.  ¶ 30 ("Plaintiff's basis for damages is (a) the stigma of being seen in the Press and in the Public eye as a person who repeatedly broadcast obscene material when in actuality Plaintiff was being wrongfully and arbitrarily punished for allegedly broadcasting material which under the Constitution and law is protected speech.").  Nevertheless, Plaintiff fails to allege sufficient facts to support a legally plausible claim under either theory.

> In order to formulate a claim under the Fourteenth Amendment's Due Process Clause, [Plaintiff] must demonstrate that he possesses a constitutionally protected liberty or property interest, and that state action has deprived him of that interest. See U.S. Const. amend. XIV, § 1; see also, e.g., Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 1908 (1989)(citation omitted).

Storman v. Klein, 2009 WL 1035964, at * 11 (S.D.N.Y. April 20, 2009)(footnotes omitted).

The facts alleged in the Complaint fail to demonstrate that Plaintiff had a protected property interest in his voluntary disc jockey privileges at the Station. Rather, the allegations in the Complaint demonstrate that Plaintiff had a unilateral expectation of, or desire for, the"privilege" to serve as a voluntary disc jockey, and that he did so at the discretion of the Station's management and Board of Directors. There is no allegation that Plaintiff had a contract for the position or that state law somehow entitled him to the position.  Without factual recitals supporting the existence of a protected property interest in the broadcast privileges at the Station, the claim is legally implausible. See Bd. of

14

Regents v. Roth, 408 U.S. at 577, 92 S. Ct. at 2709 ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." ); Velez v. Levy, 401 F.3d 75, 85 (2d Cir. 2005)("[O]nly where a plaintiff can demonstrate that state law confers 'a legitimate claim of entitlement' to a particular position will a property interest in that position arise."); Storman, 2009 WL 1035964, at * 12 ("A plaintiff must establish that his contract or functional equivalent confers the benefit as 'virtually a matter of right.'")(quoting Schwartz v. Thompson, 497 F.2d 430, 433 (2d Cir. 1974)); see also Arteta v. County of Orange, 141 Fed. Appx. 3, 6 (2d Cir. 2005)("When an individual claims to have a property interest related to employment, courts may look to the relevant contract of employment - either explicit or implicit - or its functional equivalent to determine whether the individual has such a property interest.").  Hence, any Fourteenth Amendment claim brought on this basis must be dismissed.[7]

To the extent that the Complaint alleges a denial of a Fourteenth Amendment liberty interest based upon purported damage to Plaintiff's reputation, the claim fails because Plaintiff has not alleged sufficient facts to satisfy the "stigma" element of the claim.  See Storman, 2009 WL 1035964, at * 13- *15.  Assuming the Station publicized a

---

[7]It is also worth noting that the Station afforded Plaintiff notice of the Board meeting where the "future" of a broadcast privileges would be addressed, and afforded him an opportunity to present his defense to the Board.  Thus, it would seem that the Station afforded Plaintiff constitutionally adequate due process before it suspended him from serving as a disc jockey.  See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542, 105 S. Ct. 1487, 1493 (1985)("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'")(quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S. Ct. 652, 656-57 (1950)); Calhoun v. N.Y. State Div. of Parole Officers, 999 F.2d 647, 653 (2d Cir.1993) ("Due process requires, as a general matter, 'an opportunity to be heard' 'at a meaningful time and in a meaningful manner.'")(quoting Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 902 (1976)).

statement that Plaintiff was banned for playing profane material on two occasions and for refusing to sign an agreement to abide by the Station's policy, the statement reflects conduct that was within Plaintiff's power to correct, which did not reflect dishonesty or immorality, and which Plaintiff has not asserted was false.  Thus, the claim fails to assert a plausible claim of the deprivation of a constitutionally protected liberty interest.  See id. at *14 ("[S]tatement[s] that an employee poorly performed her duties or acted in an improper manner, or that describe behavior or actions that are within the employee's power to correct, do not generally qualify as stigma for constitutional purposes.")(interior quotation marks and citations omitted);  Schlesinger v.. N.Y. City Transit Auth., 2001 WL 62868, at *7 (S.D.N .Y. Jan. 24, 2001) ("The defamatory statements accused plaintiff only of acting in an unprofessional manner. Furthermore, the charges against plaintiff did not reflect dishonesty or immorality, which may be beyond plaintiff's power to correct. Rather, the charges primarily concerned one incident where plaintiff acted in a disrespectful manner. Because such conduct is within his power to correct, the charge is not sufficiently stigmatizing.");  Storman, 2009 WL 1035964, at * 15 ("[Plaintiff] also must assert that the stigmatizing statements are false, and prove the stigmatizing statements were publicized.")(citations omitted).  Accordingly, any Fourteenth Amendment due process claim based upon a purported denial of a liberty interest must be dismissed.

      **c.**    **Preliminary Injunction**

Turning to the sought-after preliminary injunction against the Station, it is apparent that Plaintiff seeks relief which will alter, rather than maintain, the status quo.  Thus, Plaintiff must make a "clear" or "substantial" showing of the likelihood of success on his

Section 1983 claims.[8]  In addressing the merits of Plaintiff's claims, the initial question is

whether he has alleged sufficient facts to establish that the Station, a nominally private

entity, acted under color of state law with respect to Plaintiff's disc jockey privileges such

to implicate Section 1983.  See Flagg Bros. v. Brooks, 436 U.S. 149, 155-57 (1978)(Under

§ 1983, a plaintiff must prove that a defendant deprived him of a constitutional or federal

statutory right while acting under the color of law.).   The Court finds that he has not.

  The Supreme Court has held that, to implicate 42 U.S.C. § 1983, conduct must be

"fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982);

see also Brentwood Academy v. Tenn. Secondary Sch. Ath. Ass'n,  531 U.S. 288, 306

(2001).[9]

> For the purposes of section 1983, the actions of a nominally private entity
> are attributable to the state when: (1) the entity acts pursuant to the
> "coercive power" of the state or is "controlled" by the state ("the compulsion
> test"); (2) when the state provides "significant encouragement" to the entity,
> the entity is a "willful participant in joint activity with the [s]tate," or the entity's

---

[8]Because Plaintiff asserts a loss of his First Amendment right to free speech, the dispute on the preliminary injunction motion is whether Plaintiff can satisfy the second prong on the preliminary injunction standard. See Elrod v. Burns, 427 U.S. 347, 373 (1976)("[T]he loss of First Amendment freedoms, for even minimal periods of time, constitutes irreparable injury." ); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir. 1984)("[W]hen an alleged deprivation of a constitutional right is involved, . . . no further showing of irreparable injury is necessary.").

[9] The Supreme Court wrote in Brentwood Academy:

Like the state-action requirement of the Fourteenth Amendment, the state-action element of 42 U.S.C. § 1983 excludes from its coverage merely private conduct, however discriminatory or wrongful.  Careful adherence to the 'state action' requirement thus preserves an area of individual freedom by limiting the reach of federal law and federal judicial power.  The state-action doctrine also promotes important values of federalism, avoiding the imposition of responsibility on a State for conduct it could not control. Although we have used many different tests to identify state action, they all have a common purpose. Our goal in every case is to determine whether an action can fairly be attributed to the State.

531 U.S. at 306 (internal citations and quotation marks omitted).

functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the [s]tate," ("the public function test").  Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n, 531 U.S. 288, 296, 121 S. Ct. 924, 148 L. Ed.2d 807 (2001) (citations and internal quotation marks omitted).

Sybalski v. Independent Group Home Living Program, Inc., 546 F.3d 255, 257-58 (2d Cir. 2008).

Plaintiff argues that the Station is a state actor under the joint action test because BU created, funded, and held the FCC license for the Station and, thus, BU was entwined with the Station.

It is not enough, however, for a plaintiff to plead state involvement in "*some activity* of the institution alleged to have inflicted injury upon a plaintiff"; rather, the plaintiff must allege that the state was involved "with *the activity that caused the injury*" giving rise to the action. Schlein v. Milford Hospital, Inc., 561 F.2d 427, 428 (2d Cir.1977) (internal quotation marks and citation omitted)(emphases added); see also United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1296 (2d Cir.1991) ("The question is not whether the decision to establish the [private entity] was state action, but rather whether the [private entity]'s decision to sanction [plaintiffs] may be 'fairly attributable' to the [g]overnment." (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937, 102 S. Ct. 2744, 73 L. Ed.2d 482 (1982))).

Sybalski, 546 F.3d at  257-58 (emphasis in Sybalski).

Plaintiff has not alleged sufficient facts to demonstrate that BU or any of its administrators had any involvement in the creation or enforcement of the Station's policies, and there are no factual allegations that BU or its administrators played any role in Plaintiff's suspension or in the purported statements about the suspension.  While Plaintiff alleges that, after he was suspended, he wrote to President DeFleur complaining of what he felt was the Station's unconstitutional policy, see Compl.  ¶ 24 & Ex.  7, the Supreme Court has held that the "[m]ere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives . . .

18

." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982).

Plaintiff has failed to allege sufficient facts to establish that the Station's actions in drafting and enforcing its profanity and obscenity policy, or making statements about Plaintiff's suspension, were taken under color of state law.  Without state action on the Station's part, the Section 1983 claims against this defendant are fatally flawed and the sought-after injunction cannot issue. More importantly, however, is the Court's current lack subject matter jurisdiction over this matter.  With the dismissal of BU from this action and the determination that the Section 1983 claims against the Station are fatally flawed, the Court lacks subject matter jurisdiction over the matter.  Therefore, the Court must *sua sponte* dismiss the action against the Station despite its non-appearance in this matter. See Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. DuPont, 565 F.3d 56, 62-63 (2d Cir. 2009).[10]

## V.     CONCLUSION

For the reasons articulated above, SUNY BINGHAMTON's motion to dismiss the claims against it [dkt. # 7] is **GRANTED**, and all claims against SUNY BINGHAMTON are **DISMISSED**.  Plaintiff's motion for a preliminary injunction [dkt. # 18] is **DENIED**.  Further, the Court *sua sponte* **DISMISSES** the action against WHRW FM RADIO for lack of subject

---

[10] In Durant, Nichols, the Second Circuit wrote:

"It is a fundamental precept that federal courts are courts of limited jurisdiction" and lack the power to disregard such limits as have been imposed by the Constitution or Congress. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374, 98 S. Ct. 2396, 57 L. Ed.2d 274 (1978).  If subject matter jurisdiction is lacking and no party has called the matter to the court's attention, the court has the duty to dismiss the action *sua sponte*. See, e.g., Louisville & Nashville R.R. v. Mottley, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908).

565 F.3d at 62-63.

matter jurisdiction.

**IT IS SO ORDERED.**

DATED:June 15, 2009

Thomas J. McAvoy
Senior, U.S. District Judge